[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal, pursuant to Conn. Gen. Stat. 8-8, from the defendant Zoning Board of Appeals for the Town of Glastonbury's [Board] denial of a variance application to allow a two family dwelling on property owned by plaintiffs, Jethalal and Manujula J. Makati, in a zone which only permits single family dwellings.
On February 21, 1991 the matter was argued before this court and aggrievement was found based on a stipulation of facts.
PROCEDURAL FACTS
On November 13, 1989, plaintiffs filed an application with the Board for approval of a variance to the single family dwelling restriction for Rural Residence Zones (RR Zones) imposed in Glastonbury Zoning Regulations 4.2.1. (Record Item (RR.) 8, Application). This application was filed to allow a two family dwelling at 1852 Hebron Avenue in Glastonbury. Id.
On November 21, 1989 the Town Plan and Zoning Commission reviewed the application and unanimously endorsed the variance to the Board. (RR. 7, Endorsement) A public hearing of the application by the Board took place on December 4, 1989 (RR. 5, Transcript of Public Hearing). The Board denied the variance without prejudice and sent the plaintiffs notice of its denial of the application, dated December 6, 1989, by certified mail. (RR. 6, Notice of Decision).
On December 13, 1989, plaintiffs filed a reapplication for the variance, which is the subject of this appeal. (RR. 16, Application). A public hearing of the reapplication by the Board took place on January 8, 1990. (RR. 9, Transcript of Public Hearing). The Board denied the variance on the ground that insufficient hardship had been demonstrated and sent the plaintiffs notice of its denial of the reapplication, dated January 10, 1990, by certified mail. (RR. 10, Notice of Decision).
BACKGROUND FACTS
On January 12, 1983 a previous owner of the property in question was granted a building permit to convert the existing two car garage into a studio sewing room and mud room. Sometime between the date this building permit was issued and the date the plaintiffs purchased the premises in January of 1988, the use for which the above-described building permit was granted was illegally altered to a separate dwelling which CT Page 4633 included a kitchen and a bathroom. The plaintiffs allegedly purchased the subject property as a two family dwelling and proceeded to rent out both dwelling units. Apparently, the plaintiffs believed that the premises could legally be used as a two-family dwelling based on records in the Town Assessor's Office indicating that the property was being taxed as a two-family dwelling. The plaintiffs never consulted the appropriate town records to determine whether the use of the premises was legal.
In October of 1989, there was a fire at the subject property. Subsequent to the fire, the building inspector refused to issue the appropriate permits necessary for the plaintiffs to rebuild the damaged premises until either the downstairs kitchen unit was dismantled or a variance use granted by the Board allowing the apartment. Plaintiff subsequently applied for the variance which is the subject of this appeal.
SCOPE OF REVIEW
A trial court is not at liberty to substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. PZC, 206 Conn. 554, 572-73 (1988); Parks v. PZC, 178 Conn. 657,663 (1979). The court is only to determine whether the Board has acted illegally, arbitrarily, or in abuse of its discretion; see Frito-Lay, Inc., 206 Conn. at 573; Raybestos-Manhattan, Inc. v. PZC, 186 Conn. 466, 470 (1982); by simply determining whether the record reasonably supports the conclusion reached by the agency. Primerica v. PZC, 211 Conn. 85, 96 (1989); Burnham v. PZC, 189 Conn. 261, 265 (1983).
The burden of proof to demonstrate that the Board acted improperly is upon the plaintiff. Adolphson v. ZBA, 205 Conn. 703,707 (1988); Burnham, 189 Conn. at 266.
VARIANCE
"[A] variance is a prohibited use or structure that is permitted by the board, pursuant to its authority under the regulations. The variance power exists to permit what is prohibited in a particular zone." Adolphson, 205 at 710.
Two conditions must be satisfied in order for a zoning authority to grant a variance. Grillo v. ZBA, 206 Conn. 362,368 (1988); Adolphson, 205 Conn. at 709. The board may grant a variance provided that: "(1) the variance is shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." Id. "If either CT Page 4634 condition is not fulfilled the zoning authority lacks the power to grant a variance." Spencer v. ZBA, 15 Conn. App. 387, 389
(1988).
First, plaintiffs contend that the variance will not substantially affect the zoning plan of the Town of Glastonbury. Specifically, plaintiffs allege that the zoning plan will not be affected because the subject property is not visually distinguishable from surrounding dwellings, the subject property's large driveway affords enough space to its occupants, and there have been no complaints about the subject property during the period it illegally existed as a two family dwelling. Further, plaintiffs point out the fact that the Glastonbury Planning and Zoning Commission endorsed the variance to the Board and that the Glastonbury Zoning Regulations allow an owner of a dwelling in an RR Zone to get a special permit to construct a live in apartment for an elderly parent within their home. (RR. 17, Glastonbury Zoning Regulations 6.11).
"Since no comprehensive plan was certified as part of the record, the court must look to the zoning ordinance itself for the comprehensive plan." Miclon v. ZBA, 171 Conn. 420, 424
(1977) (citations omitted). Plaintiffs acknowledge in their application for a variance that the subject property is located in an RR Zone (RR. 16, Application) and the Glastonbury Zoning Regulations does not permit two family dwellings in RR Zones. (RR. 17, Glastonbury Zoning Regulations 4.2.1). While the regulations allow special permits in RR Zones for elderly parent live in apartments (RR. 17, Glastonbury Zoning Regulations 6.11) it is submitted that there is nothing in the regulations indicating that a two family dwelling occupied by unrelated persons fits into a zoning plan designed for single family residences.
There is no evidence in the record to indicate that a two-family dwelling is consistent with the comprehensive plan requiring single family residences in an RR zone. In fact, a number of people who live near the subject property spoke out at the hearing against allowing the variance because it would upset the zoning plan of their neighborhood. It is also of no legal significance that the Planning and Zoning Commission endorsed the plaintiffs' variance application.
The court concludes and finds that the plaintiffs did not carry their burden of showing that the Board acted improperly in denying the variance application because the record does not show that the variance will be substantially harmonious with the comprehensive zoning plan.
Next, plaintiffs contend that the Board incorrectly denied CT Page 4635 the variance on the ground that insufficient hardship had been demonstrated. Specifically, plaintiffs allege that the denial of the variance had caused plaintiffs an unusual hardship.
The only apparent losses plaintiffs may suffer will be the loss of rental income from the additional apartment and a drop in property value. "Disadvantage in property value or income, or both, to a single owner of property, resulting from the application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship. " Grillo, 206 Conn. at 369
(citations omitted). Financial hardship only exists in exceptional situations where a Board could reasonably find that applying the regulation to the property greatly decreases or practically destroys its value for any reasonable uses such that the regulations have a "confiscatory or arbitrary effect." Id. Since there is no evidence in the record that the subject property is unmarketable or that the subject property cannot be rented as a single family residence, it cannot be deemed to be the exceptional kind of financial hardship deemed to have a "confiscatory or arbitrary" effect.
Plaintiffs argue that the denial of the variance caused an unusual hardship because they detrimentally relied on the town assessor's records in purchasing the property as a two family residence. Specifically, plaintiffs allege that they checked the assessor's files and relied on them to their detriment in their purchase because they were under the belief that assessor's records showing a two family residence demonstrated zoning compliance. "It has always been the policy of our law that the land records should be the authentic oracle of title on which the bona fide purchaser . . . might safely rely." Peckheiser v. Tarone, 186 Conn. 53, 57 (1982), citing Safford v. McNeil, 102 Conn. 684, 687 (1925).
The assessor of a town has nothing to do with enforcement of zoning regulations. The plaintiffs apparently made no attempt to check the land records before they purchased the property to determine whether a variance, special permit, or special exception had been granted, or whether the use was a legal nonconforming use. The plaintiffs unreasonably relied on assessor records to draw conclusions concerning the zoning status of the property. A review of the Glastonbury Building Zone Regulations would also have shown that the premises were not zoned for two-family housing.
Since the plaintiffs offer no authority to support their contention that the assessor's records can be relied on by a purchaser as evidence of zoning compliance, they have failed to meet their burden of showing that the Board acted improperly. CT Page 4636
Plaintiffs also argue that because the hardship arose from the voluntary act of the Town of Glastonbury in creating the assessor records, the Board should have granted the variance. "Where the hardship involved arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exercise of its liberal discretion, grant the variance." Whittaker v. ZBA, 179 Conn. 650,657-58 (1980) (citations omitted). As discussed above, plaintiffs have failed to show that a town assessor's records can be relied on by a purchaser as evidence of zoning compliance, therefore they have not shown that a hardship arises from the Town of Glastonbury's actions.
Next, plaintiffs argue that their hardship from reliance on the town assessor's records distinguishes their hardship from those generally affecting properties in the same zoning district. While it is true that a variance cannot be granted unless there is a hardship "different in kind from that generally affecting properties in the same zoning district," as stated above, the plaintiffs in this case have failed to show that any hardship arose from their reliance on the town assessor's records. Spencer, 15 Conn. App. at 389.
CONCLUSION
This court is certainly sympathetic to the position of the plaintiffs as a result of their being misled or deceived by the previous owners of the property as to the legal status of the premises and their unjustifiable but good faith reliance on the assessor's records. However, this court may not retry the issues or substitute its judgment for that of the Board. An examination of the record fails to disclose any basis for disturbing the decision of the Board.
Accordingly, the appeal is dismissed.
CLIFFORD, J.